IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff/Respondent, <br><br> vs. <br><br> CLEMENT DAVID KING, <br><br> Defendant/Movant. | Cause No. CR 10-15-GF-BMM <br><br><br> ORDER |

This case comes before the Court on Defendant King's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. King is a federal prisoner proceeding pro se.

## I. Background

On February 3, 2010, a grand jury indicted King on one count of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a). *See* Indictment (Doc. 1). Assistant Federal Defender R. Henry Branom represented him. *See* Am. Order (Doc. 15).

On June 17, 2010, the grand jury returned a superseding indictment. Count 1 amended the date of the offense from May 10, 2008, to May 11, 2008. Count 2, a new charge, accused King of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2). *See* Superseding Indictment (Doc. 39) at 2–3.

1

Jury trial of Count 1 began on July 20, 2010. *See* Minutes (Doc. 65). The jury returned a guilty verdict the next day. *See* Verdict (Doc. 72).

Jury trial of Count 2 began on November 9, 2010. *See* Minutes (Doc. 99). The jury returned a guilty verdict the next day. *See* Verdict (Doc. 107).

Initially, King was sentenced for Count 1 on November 8, 2010, and for Count 2 on February 3, 2011, *see* Minutes (Docs. 96, 129), resulting in entry of two different judgments, *see* Judgments (Docs. 110, 130). King appealed, challenging the sentence and the admission, at both trials, of a stipulation that he was previously adjudicated a juvenile delinquent for sexually abusing a minor. The Court of Appeals rejected his argument concerning the stipulation, but vacated his sentences and remanded for a new sentencing hearing. *See* Mem. (Doc. 143), *United States v. King*, Nos. 10-30330 & 11-30031 (9th Cir. Feb. 21, 2012).

On February 27, 2013, the Court imposed a total sentence of 365 months in prison, consisting of 175 months on Count 1 and 190 months on Count 2, consecutive, to be followed by a life term of supervised release on each count. *See* Am. Judgment (Doc. 182) at 2–3. King appealed again. On December 16, 2014, the Court of Appeals affirmed the sentence. *See* Mem. (Doc. 191), *United States v. King*, No. 13-30057 (9th Cir. Dec. 16, 2014).

King's conviction became final when the United States Supreme Court denied his petition for writ of *certiorari* on April 20, 2015. *See* Clerk Letter (Doc.

2

194) at 1; *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

King filed his motion under 28 U.S.C. § 2255 on April 22, 2020. *See* Mot. § 2255 (Doc. 197) at 6 ¶ C; *Houston v. Lack*, 487 U.S. 266, 270 (1988). He alleges that counsel provided ineffective assistance at trial and on appeal. He also claims the prison term and conditions of supervised release are unreasonable. *See* Mot. § 2255 (Doc. 197) at 4–5 ¶¶ 5A–5C.

## II. Statute of Limitations

### A. Limitations Period and Opportunity to Respond

A one-year limitations period applies to petitions filed by federal prisoners. *See* 28 U.S.C. § 2255(f). The limitations period applies on a claim-by-claim basis and begins running on "the latest" of four relevant "trigger" dates. *See* 28 U.S.C. § 2255(f)(1)–(4); *Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012).

None of King's claims involve impediments to filing created by unconstitutional or illegal government actions or new decisions by the United States Supreme Court. *See* 28 U.S.C. § 2255(f)(2), (3). King's third claim for relief asserts in part that case law governing conditions of supervised release "has changed substantially" since his resentencing in 2013. *See* Mot. § 2255 at 5 ¶ 5C. Section 2255(f)(4) applies when a defendant newly discovers facts supporting a claim, provided the defendant acted diligently. But case law "establishing an abstract proposition of law arguably helpful to the petitioner's claim does not

constitute the 'factual predicate' for that claim" under § 2254(d)(1)(D), *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005), or, by extension, § 2255(f)(4), *see id*. at 1088; *McCloud v. United States*, 987 F.3d 261, 264, 265 n.11 (2d Cir. 2021) (citing *Shannon*). The "facts supporting" King's third claim are the conditions of supervised release in *his own* case. *See Shannon*, 410 F.3d at 1088–89. He has known them at least since entry of the amended judgment on February 27, 2013. *See* Am. Judgment (Doc. 182) at 3–4. And that date is earlier than the date King's conviction became final, not later.[1]

As to all claims, therefore, King should have filed his § 2255 motion within one year of the date his conviction became final. *See id.* § 2255(f)(1). As noted above, that occurred when the Supreme Court denied his *cert.* petition on April 20, 2015. King should have filed on or before April 20, 2016. He did not file until April 22, 2020, four years too late.

King attached to his § 2255 motion a second motion, seeking waiver of the filing deadline. In it, he stated that he tried many times to contact the Federal Defenders between 2015 and the week of April 13, 2020, when King's father contacted the office and King was able to speak with someone. *See* Mot. to Waive

---

[1] King will have an opportunity to request modification of his conditions of supervised release. *See, e.g.*, 18 U.S.C. § 3583(e) & (2). As his current projected release date is March 4, 2036, now is not "a reasonable time in advance of release" to discuss his conditions. *See United States v. Hogenkamp*, 979 F.3d 1167, 1168 (7th Cir. 2020) (per curiam).

(Doc. 197-1) at 1.

The Court gave King an opportunity to show cause why his motion should not be dismissed with prejudice as time-barred. *See* Order to Show Cause (Doc. 202) at 3; *see also Day v. McDonough*, 547 U.S. 198, 210 (2006); *Herbst v. Cook*, 260 F.3d 1039, 1042–43 (9th Cir. 2001). Noting that King should explain why he could not file until he contacted the Federal Defenders, the order also advised him he need not provide evidence, but must articulate "all additional information he wants the Court to consider." Order to Show Cause at 3.

King responded on July 10, 2020 (Doc. 203), and supplemented his response on July 16, 2020 (Doc. 204). He asserted actual innocence and referred to an FBI 302 report of an interview with a potential witness, Bridgette Black Crow. Defense counsel received the report in discovery, but it was not filed with the Court. On January 22, 2021, the United States filed the 302 and another document, a letter written by King to Charles Stewart, a relative of his ex-partner, Christina Stewart (Doc. 212). King addressed these documents on February 3, 2021 (Doc. 213). *See* Rule 7(c), Rules Governing § 2255 Proceedings.

King's motion seeking waiver of the filing deadline invokes equitable tolling of the limitations period. *See, e.g.*, *Holland v. Florida*, 560 U.S. 631, 649 (2010). He also asserts he is actually innocent. *See, e.g.*, *McQuiggin v. Perkins*, 569 U.S. 383, 387 (2012).

## B. Equitable Tolling

A party who files a § 2255 petition is entitled to equitable tolling if he "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (internal quotation marks and citation omitted); *see also United States v. Battles*, 362 F.3d 1195, 1196–97 (9th Cir. 2004).

King explains that, like many inmates, he did not know how to proceed after he learned his conviction was final and counsel no longer represented him. *See* Resp. to Order (Doc. 203) at 1–2. He turned to other inmates for assistance and wound up losing his legal materials when his jailhouse lawyer was disciplined for having other inmates' legal work. He tried to reach the Federal Defenders to obtain guidance and/or replace his legal work, but, he says, "[n]ot once, not in the five years, multiple times every year, was any of my attempts to communicate reciprocated, or responded to, until my dad finally agreed to call them for me." *Id*. at 3; *see also* Mot. to Waive (Doc. 197-1) at 1.

Inmates pursuing postconviction relief without the assistance of counsel face a difficult task. King phoned the Federal Defenders, "multiple times every year," instead of filing a § 2255 motion or any other motion with the Court. Resp. to Order (Doc. 203) at 2. The Court prompted King to explain why he could not file until he contacted the Federal Defenders. *See* Order to Show Cause (Doc. 202) at

6

3. King does not respond to that issue.

As King says, reasonable diligence is not "maximum feasible" diligence. *See* Resp. to Order (Doc. 203) at 3. "The standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011).

Equitable tolling can be appropriate "only when an extraordinary circumstance *prevented* a petitioner acting with reasonable diligence from making a timely filing." *Smith v. Davis*, 953 F.3d 582, 600 (9th Cir. 2020) (en banc) (emphasis added). King fails to explain why his inability to reach anyone in the Federal Defenders' office for five years *prevented* him from filing. In fact, he says he filed his § 2255 motion four to nine days after "[t]hey finally sent me a docket sheet." Resp. to Order at 3.

"[I]t is unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027–28 (9th Cir. 2005) (quoting *Spitsyn v. Moore*, 345 F.3d 796, 801 (9th Cir. 2003)); *see also, e.g.*, *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009). King does not claim that he could not file because he lacked his case materials. He does not say that he

obtained his case materials from the Federal Defenders in April 2020. He also does not claim that he was misled in any way. *Compare, e.g.*, *Doe*, 661 F.3d at 1010 (allowing equitable tolling where petitioner was "deceived, bullied, and lulled by an apparently inept and unethical lawyer").

King's allegations add up to no more than the claim that he did not file sooner because he was trying to contact the Federal Defenders. In some circumstances, unsuccessful attempts to contact previous counsel might reasonably delay filing. King fails to identify facts supporting an inference that he made a reasonable effort to file, if not on time, then at least in a timely fashion. A reasonable person exercising due diligence and attempting in good faith to file on time would not continue to place unanswered phone calls or send emails and letters into a void for five continuous years with no response. King is not entitled to equitable tolling.

### C. Actual Innocence

King also asserts that he is actually innocent. Actual innocence is a "gateway" to consideration of the merits of claims that are otherwise time-barred. The defendant must show that, in light of all the evidence available, every reasonable juror would, more likely than not, retain reasonable doubt. *See Perkins*, 569 U.S. at 399; *see also House v. Bell*, 547 U.S. 518, 538 (2006); *Schlup v. Delo*, 513 U.S. 298, 327–28 (1995). Lack of diligence in asserting actual innocence

weighs against the defendant when a court is deciding whether a § 2255 movant has carried his burden of proof. *See Perkins*, 569 U.S. at 387.

Actual innocence "does not merely require a showing that a reasonable doubt exists." *Schlup*, 513 U.S. at 329. At this stage of the proceedings, King must allege facts that, if true, would prove that probably "no reasonable juror would have found [him] guilty." *Id*. The standard "is demanding and permits review only in the extraordinary case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citation omitted). In *House*, for example, the petitioner undermined in multiple ways DNA and blood evidence connecting him to the victim, two witnesses testified to separate confessions by the victim's husband, two other witnesses testified to his suspicious behavior at the time of the crime, and the husband had a history of spousal abuse. *See id*. at 540–54.

### 1. Count 1

A jury convicted King of engaging in sexual intercourse with a 13-year-old girl when he was 20 years old. *See* Superseding Indictment (Doc. 39) at 2; Verdict (Doc. 72) at 1; 18 U.S.C. § 2243(a). At trial, T.H. testified that King, driving a red car, picked her up in Hays, took her out past the Mission area on the Reservation, had sexual intercourse with her, and drove her back to Hays. *See, e.g.*, 1 Trial Tr. (Doc. 117) at 53:6–65:20. T.H. did not report the offense until several months later. *See id*. at 68:3–23.

The original indictment alleged the offense occurred on or about May 10, 2008. *See* Indictment (Doc. 1) at 2. At a pretrial motion hearing, counsel suggested King's computer would show he "was sending messages to . . . a former girlfriend's phone during the time the alleged assault occurred." Mot. Hr'g Tr. (Doc. 115) at 5:5–17. Later, the United States obtained a superseding indictment, adding Count 2 and amending the date of Count 1 based, it said, on T.H.'s clarification that the assault occurred on Mother's Day 2008 rather than the day before. *See* Mot. Hr'g Tr. (Doc. 116) at 5:25–6:8; Superseding Indictment (Doc. 39) at 2. King does not mention it, but the Court will assume, for the sake of argument, that the prospective alibi mentioned by counsel was viable.

### a. Black Crow's Statement

King asserts that a witness, Bridgette Black Crow, told the FBI she was with King on Mother's Day 2008. *See* Supp. Resp. to Order (Doc. 204) at 2. According to the FBI 302:

> In response to questions concerning her contact with King around Mother's Day 2008, Black Crow stated she recalls this date because she was a new mother. She noted her child (daughter) was born in January 2008. Black Crow recalls being on the computer and receiving a text message on the computer from King. He wished her happy Mother's Day. Black Crow indicated this was around 2:00 p.m. or 3:00 p.m. He (King) arrived at Black Crow's grandmother's home a short time later. She estimated King arrived there around 3:00 p.m. Black Crow and King went into her grandmother's van and they listened to music. While in the van, King exposed his penis and Black Crow grabbed it. She noted King stayed there approximately two hours and he departed around 5:00 p.m. and walked to his

>  grandmother's home.
>       . . . When asked if she was sure about the time King departed, Black Crow indicated she was. She noted he departed before dark, and before she ate Mother's Day dinner. She emphasized they usually eat dinner around 6:30 p.m. or 7:00 p.m.

FBI 302 (Doc. 212) at 1 para. 4, 2 para. 1. Black Crow gave her statement in July 2010, more than two years after the incident. *See id.* at 1.

A reasonable juror might believe Black Crow and King. A reasonable juror might still believe T.H. beyond reasonable doubt. The statement does not prove King did not assault T.H.

### b. Ford Taurus

King asserts that, due to its unreliability, he stopped driving his red Ford Taurus to the areas identified by T.H. in her testimony. He "abandoned it at a repair shop in Roy, Montana, after its pulley system locked up." Resp. to Order (Doc. 213) at 4. He does not suggest that he abandoned the car before Mother's Day weekend in 2008. (Notably, the 302 reflects that Black Crow said she rode in the car as late as September 2008.) And even if he did, a reasonable juror might still be convinced, beyond reasonable doubt, that T.H. truthfully described King's sexual assault on her.

### c. Letter to Charles Stewart

This letter is dated May 19, 2010, more than three months after King was indicted. In view of the letter's tone and timing, a reasonable juror could disbelieve

11

King's assertions in it. A reasonable juror might even take it as consciousness of guilt and/or an attempt to intimidate a potential witness. *See* Letter (Doc. 212 at 4–7).

### d. Cumulative Evidence

Jurors had to evaluate T.H.'s credibility and decide whether she was correct about the essential facts of the offense. The trial transcript, Black Crow's statement, King's claim that he abandoned the red Ford, the ambiguous letter to Charles Stewart, and the alibi for May 10, 2008, taken all together, do not persuade the Court that all reasonable jurors would likely retain reasonable doubt. King's allegations do not meet the threshold of actual innocence as to Count 1.

### 2. Count 2

A jury convicted King of attempting to receive child pornography on a desktop computer in late May and early June 2008. *See* Superseding Indictment (Doc. 39) at 3; Verdict (Doc. 107) at 1; 18 U.S.C. § 2252A(a)(2).

King states that he frequently allowed other people to use his debit card. *See* Resp. to Order (Doc. 213) at 3–4. At best, this allegation is marginally relevant. The United States did not prove King used a debit card to purchase child pornography online.

Witness Christina Stewart testified that a debit or credit card was in King's hand when she saw him sitting naked in front of the desktop computer with a bottle

of lotion. *See* 1 Trial Tr. (Doc. 139) at 48:9–19. She also testified that she added King to her Wells Fargo account and he might have had a card connected with that account. She did not say that she saw him using the card or that she knew the card in his hand was the Wells Fargo card rather than a Mastercard or Visa. *See id.* at 50:10–51:18, 60:21–61:6.

Through FBI Agent McGrail, the United States introduced banking records from Wells Fargo. The records showed that no funds were available in the account between the end of May and beginning of June 2008. *See id.* at 79:9–84:10, 89:10–91:25. This evidence was consistent with Agent Salacinski's analysis of the desktop's hard drive, which showed that someone visited websites hosting child pornography and attempted, but failed to purchase memberships connected with King's mailing and e-mail addresses. *See, e.g.*, 1 Trial Tr. (Doc. 139) at 106:8–118:22, 120:21–128:11, 137:4–138:12, 145:11–146:3; *see also id.* at 52:17–53:14, 143:4–17.

Evidence supporting King's assertion that he frequently loaned a debit or credit card to others have little impact on a reasonable juror's assessment of the evidence presented at trial. King does not meet the actual-innocence threshold as to Count 2.

### D. Conclusion

King's motion under 28 U.S.C. § 2255 was filed four years too late. The

13

facts that he alleges do not demonstrate that, despite his reasonable diligence, an extraordinary circumstance prevented him from timely filing. King also fails to point to evidence likely to persuade all reasonable jurors to retain reasonable doubt as to either Count 1 or Count 2. Finding no legitimate excuse for his belated filing, the Court dismisses his motion with prejudice.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a claim is dismissed on procedural grounds, the Court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack*, 529 U.S. at 484).

King does not adequately explain his allegations that trial counsel promised him a retrial or conceded his guilt on appeal. His claim that counsel should have

obtained telephone records mistakes the likelihood of obtaining such records when charges are filed more than a year and a half after the incidents in question. For these reasons, his allegations of ineffective assistance do not appear substantial. But, at any rate, he does not allege facts that would, assuming they are true, support equitable tolling or his actual innocence. He filed four years too late.

A COA is not warranted.

Accordingly, IT IS ORDERED:

1. King's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 197) is DISMISSED WITH PREJUDICE as time-barred.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if King files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 20-38-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against King.

DATED this 15th day of October, 2021.

Brian Morris, Chief District Judge
United States District Court